**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION**

**JOHNNY HARRIS**                                                                                          **PLAINTIFF**

v.                                            **Case No. 2:21-cv-00040-KGB**

**WEHCO VIDEO INC.,** *et al.*                                                                **DEFENDANTS**

<u>**ORDER**</u>

**I.      Background**

On April 16, 2021, plaintiff Johnny Harris brought a *pro se* complaint pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Arkansas Civil Rights Act ("ACRA"), Arkansas Code Annotated § 16-123-101 *et seq.* against defendants WEHCO Video, Inc. ("WEHCO"), Lori Haight, Don Deem, and Charlotte Dial, all in their individual capacities (collectively "Defendants") (Dkt. No. 1). Defendants responded to the complaint by filing a motion to dismiss (Dkt. No. 2). In response to the motion to dismiss, Mr. Harris filed a motion in opposition to Defendants' motion to dismiss and request to amend his complaint (Dkt. No. 10).

The Court entered an initial scheduling Order setting pre-trial deadlines and setting a jury trial for some time during the week of June 27, 2022 (Dkt. No. 7). Defendants moved to stay discovery pending a ruling on their motion to dismiss (Dkt. No. 11).

Before the Court ruled on his request to amend his complaint, Mr. Harris filed a motion to replace or substitute original proposed first amended complaint with corrections and attached a proposed first amended complaint (Dkt. Nos. 12; 12-1).

On September 22, 2021, Mr. Harris filed a motion to request suspension of proceedings asking that the Court suspend proceedings in this matter until November 19, 2021 (Dkt. No. 14). Defendants responded and opposed Mr. Harris's motion to request suspension of proceedings (Dkt. No. 15). Mr. Harris replied to the Defendants' response to his motion (Dkt. No. 16).

On November 24, 2021, without permission of the Court, Mr. Harris filed a first amended complaint in which he named the following defendants: WEHCO Video, Inc.; WEHCO Media, Inc.; Lori Haight; Perry Whitmore; Don Deem; Charlotte Dial; and Elaine Burson (Dkt. No. 17). On the same day, Mr. Harris filed a motion to strike previous proposed amended complaints and to substitute and replace with first amended complaint (Dkt. No. 18); a motion for appointment of counsel (Dkt. No. 19); and a motion for leave to proceed *in forma pauperis* (Dkt. No. 20). Defendants responded in opposition to the motion to strike (Dkt. No. 22, ¶ 1). Defendants did not take a position on Mr. Harris's motion for appointment of counsel or motion for leave to proceed *in forma pauperis* (*Id.*, ¶¶ 2-3). Defendants filed a motion to dismiss Mr. Harris's first amended complaint (Dkt. No. 23). Mr. Harris responded to the motion to dismiss (Dkt. No. 29).

On January 25, 2022, Mr. Harris filed a motion to amend complaint, which the Court will refer to as Mr. Harris's third motion to amend complaint, and he attached a first amended complaint (proposed), which the Court will refer to hereinafter as Mr. Harris's Proposed Amended Complaint (Dkt. Nos. 30; 30-1). Defendants have responded in opposition to Mr. Harris's third motion to amend complaint (Dkt. No. 31).

The Court will take up each of the pending motions in turn.

**II.    Motions To Amend**

Before the Court are three motions to amend filed by Mr. Harris (Dkt. Nos. 12; 18; 30). On August 30, 2021, Mr. Harris filed a motion to replace or substitute original proposed first

amended complaint with corrections (Dkt. No. 12). Mr. Harris attached a proposed first amended complaint to the motion (Dkt. No. 12-1). On November 24, 2021, before the Court ruled on the pending motion to replace or substitute original proposed first amended complaint with corrections, Mr. Harris filed a first amended complaint and a motion to strike the previous proposed amended complaints and to substitute and replace with first amended complaint (Dkt. Nos. 17; 18). Defendants responded in opposition to the motion to strike and filed a motion to dismiss Mr. Harris's first amended complaint (Dkt. Nos. 22; 23). On January 25, 2022, Mr. Harris filed his third motion to amend complaint (Dkt. No. 30).

Mr. Harris indicates in his third motion to amend complaint that he seeks to "correct several errors and omissions in the previous proposed amendment(s) of which several such errors were pointed out by the Defendants in their **Motion to Dismiss for Failure to State a Claim**" (*Id.*, ¶ 5 (emphasis in original)). Accordingly, the Court denies as moot Mr. Harris's motion to replace or substitute original proposed first amended complaint with corrections and Mr. Harris's motion to strike the previous proposed amended complaints and to substitute and replace with first amended complaint (Dkt. Nos. 12; 18).

Additionally, the Court directs the Clerk of the Court to strike from the record the first amended complaint that Mr. Harris filed on November 24, 2021, without leave of the Court and to remove as defendants in this action WEHCO Media Inc., Perry Whitmore, and Elaine Burson, who were named by Mr. Harris in the improperly filed first amended complaint as named defendants (Dkt. No. 17). Federal Rule of Civil Procedure 15 sets forth the circumstances in which a party may amend its pleading as a matter of course, without first obtaining the permission of opposing parties or seeking Court permission to do so. Fed. R. Civ. P. 15. Those circumstances were not

present when Mr. Harris filed his amended complaint without the other parties' permission or leave from the Court, and the Court therefore strikes the first amended complaint.

In this Order, the Court will assess whether to grant Mr. Harris's third motion to amend complaint (Dkt. No. 30).

### A.     Legal Standard

Before the Court is Mr. Harris's third motion to amend complaint (Dkt. No. 30). Federal Rule of Civil Procedure 15 provides that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). While there is no absolute or automatic right to amend, under the liberal amendment policy of Rule 15(a), "denial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party can be demonstrated." *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987)).

#### 1.     Prejudice

As mentioned above, the Court should consider whether the grant of a motion for leave to file an amended complaint would prejudice the nonmoving party. *See Doe v. Cassel*, 403 F.3d 986, 991 (8th Cir. 2005) ("Delay alone is not enough to deny a motion to amend; prejudice to the nonmovant must also be shown." (quoting *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 841 (8th Cir. 2004))). For example, "[m]otions that would prejudice the nonmoving party by 'requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy' are particularly disfavored." *Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 395 (8th Cir. 2016) (quoting *Steir v. Girl Scouts of the U.S.A.*, 383 F.3d 7, 12 (1st Cir. 2004)); *see also Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d

928, 943 (8th Cir. 2000) (noting that prejudice can come in the form of "the burdens of additional discovery and delay to the proceedings"). Additionally, prejudice can be found in "forcing [a party] to re-litigate the dispute on new bases . . . and to incur new rounds of additional and costly discovery, and depriving it of the meaningful value of obtaining summary judgment." *Kmak v. Am. Century Cos., Inc.*, 873 F.3d 1030, 1035 (8th Cir. 2017) (quoting *Sanders v. Venture Stores, Inc.*, 56 F.3d 771, 774 (7th Cir. 1995)). The Court notes that "[a]ny prejudice to the nonmovant must [also] be weighed against the prejudice to the moving party by not allowing the amendment." *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998) (citing *Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 690, 694 (8th Cir. 1981)).

### 2. Futility

Additionally, "[a] district court's denial of leave to amend a complaint may be justified if the amendment would be futile." *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018) (quoting *Geier v. Mo. Ethics Comm'n*, 715 F.3d 674, 678 (8th Cir. 2013)). "Denial of a motion for leave to amend on the basis of futility 'means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.'" *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010) (quoting *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008)). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "While a complaint attacked by a [Federal] Rule [of Civil Procedure]

12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (citations omitted). "[T]he complaint must contain facts which state a claim as a matter of law and must not be conclusory." *Briehl v. Gen. Motors Corp.*, 172 F.3d 623, 627 (8th Cir. 1999) (citing *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995)). "When ruling on a motion to dismiss, the district court must accept the allegations contained in the complaint as true and all reasonable inferences from the complaint must be drawn in favor of the nonmoving party." *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Hafley v. Lohman*, 90 F.3d 264, 266 (8th Cir. 1996)). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

### B. Proposed Amended Complaint

In his Proposed Amended Complaint, Mr. Harris brings claims under Title VII for employment discrimination, retaliation, and hostile and abusive work environment (Dkt. No. 30-1, ¶ 1). Mr. Harris also asserts a claim for intentional infliction of emotional distress (*Id.*, ¶¶ 1-2). Mr. Harris asserts jurisdiction under 42 U.S.C. § 2000e-5 and 42 U.S.C. § 1981 (*Id.*). Mr. Harris also seeks equitable and other relief under the ADA and ACRA (*Id.*, ¶2). Mr. Harris seeks to add WEHCO Media Inc., East Arkansas Video, and Elaine Burson as defendants (*Id.*, ¶¶ 4-11).

Mr. Harris states that he was employed by WEHCO as a business sales representative working in the East Arkansas Video cable system in Forrest City, Arkansas, selling the company's internet and phone services to local businesses (*Id.*, ¶¶ 12, 14). He contends that he was a part-

time employee, but that in February 2020, he received a call from Mr. Deem, who was general sales manager of all of the business sales reps for all of WEHCO's cable systems, "advising him that there would no longer be any part-time sales positions and that Plaintiff would need to transition to full-time." (*Id.*, ¶ 17).  Mr. Harris asserts that he had previously provided a letter from his doctor to his supervisors, Kristin Young and Lori Haight, "disclosing his disability" (*Id.*, ¶ 25). Mr. Harris states that during a meeting with Mr. Deem in May 2020 to discuss the expectations of his new full-time position he "reiterated that he would need an accommodation for his disability to meet the demands of the new full-time sales duties due to a medical condition (depression and anxiety) that the Plaintiff had previously disclosed in emails in 2019 to Lori Haight at the corporate office and to Kristin Young at the local office." (*Id.*, ¶ 26).

Mr. Harris also states in his Proposed Amended Complaint that during the meeting with Mr. Deem in May 2020, he expressed concerns to Mr. Deem that he had more experience than any of the current salesmen and that he should be receiving the same salary and expense reimbursement that the other salespeople received for doing the same work (*Id.*, ¶ 27).  He states that company policy was that Mr. Deem, as Mr. Harris's supervisor, was to ensure that Mr. Harris received equal compensation for his work as compared to nonminority employees with the same job description, requirements, and duties (*Id.*).  Mr. Harris maintains that Mr. Deem "became visibly upset and raised his voice" when he asked, "if there were any other black business class sales reps employed by the company at that time" (*Id.*, ¶ 28).  Mr. Harris states that Mr. Deem stated, "that's why I don't like hiring folks like you because you people always try to play the race card" (*Id.*).  Mr. Harris asserts that Mr. Deem stated that "he had the same problem with blacks in Mississippi" and that "maybe the Plaintiff was like them and would rather sit at home and draw a government check." (*Id.*).

Mr. Harris states that, within a week or two, he discovered that he was the only black salesman employed with the company, and he sent an email complaining of racial discrimination to his supervisors (*Id.*, ¶ 29). Mr. Harris asserts that after he sent the email, he filed a charge of racial discrimination with the Equal Employment Opportunity Commission ("EEOC") and later amended his charge to include a claim of retaliation (*Id.*, ¶ 31).

Mr. Harris claims that he did not receive the same salary or expense reimbursement as four other white salesmen who were hired around the same time as he was (*Id.*, ¶ 33). He also claims that he was assigned to cover more territory than the four other white salesmen who were hired around the same time as he was (*Id.*, ¶ 35).

Mr. Harris claims that he was retaliated against when he was refused a list of company-approved doctors to treat a work injury (*Id.*, ¶ 40). He claims Defendants retaliated against him when they did not provide him with Pipedrive CRM, a tool given to white salesmen by the company (*Id.*, ¶¶ 46-52). He claims that, because he did not have Pipedrive CRM, he missed sales opportunities (*Id.*, ¶ 49). He also asserts that his disability caused him to make frequent mistakes in his sales paperwork and that he had to make multiple trips back to his customers to complete or sign missing forms (*Id.*, ¶ 50). He maintains that for him Pipedrive CRM was an accommodation that was necessary to assist him in doing work after he became a full-time employee (*Id.*, ¶ 51).

Mr. Harris claims Defendants retaliated against him when he was not notified of income opportunities provided to white salesmen in the form of extra pay for renewing customers' expired internet contacts and also extra pay for residential sales (*Id.*, ¶ 53). Mr. Harris contends that Defendants also deliberately delayed processing his sales orders to prevent him from making his sales quota and to interfere with his relationships with his customers in order to get customers to back the company in an assertion that Mr. Harris had violated a company rule (*Id.*, ¶ 54).

Mr. Harris asserts that Mr. Deem and Ms. Haight purposely doubled his workload by giving him a list of customers that they knew had offices out-of-state and made it mandatory for Mr. Harris to contact the customers on the list to get business even though Mr. Deem and Ms. Haight knew that this would not be fruitful, because the list they created for him, as opposed to the white salesmen, was made up almost completely of customers with decision makers who would not be available (*Id.*, ¶ 55). Mr. Harris asserts that Mr. Deem and Ms. Haight gave him this list so that he would miss his sales quota, so that he could be denied the additional pay, and so that he could also be subject to termination in retaliation for his complaints of discrimination (*Id.*, ¶ 55).

Mr. Harris complains that he was excluded from sales calls and meetings and was not given training and support given to white salesmen in retaliation for his complaints and his EEOC charge (*Id.*, ¶ 56). Mr. Harris asserts that, after he made his complaint, he was subject to "extra scrutiny and Plaintiff's emails to Don Deem and Lori Haight about routine sales matters were copied to Charlotte Dial, VP of Administration and Head of HR." (*Id.*, ¶ 57).

Mr. Harris claims that he suffered extreme mental and emotional anguish from the actions against him by the Defendants, that his medical issues have been exacerbated by the Defendants' retaliatory and discriminatory acts, that he did not meet the sales quota obligations, and that he suffered financial loss and other damages in the form of unpaid salary, expense reimbursement, and lost sales income (*Id.*, ¶¶ 58, 60). Further, Mr. Harris claims that he suffered from "severe emotional distress" for which he has received and continues to receive medical treatment and incur medical expenses (*Id.*, ¶ 62).

    **C.**     **Analysis**

        **1.**     **Prejudice**

Defendants do not allege prejudice from allowing Mr. Harris to amend his complaint. The case is in its early stages, and the Defendants filed a motion on August 13, 2021, to stay discovery until the Court ruled on their motion to dismiss filed May 24, 2021 (Dkt. No. 11). The Court determines that, based on the record before it, Defendants have not established that that they would be prejudiced by allowing Mr. Harris to amend his complaint.

### 2. Futility

Defendants argue that Mr. Harris's proposed amendment is futile because it cannot withstand a motion to dismiss (Dkt. No. 31, ¶ 4). Defendants ask the Court to incorporate by reference their previously filed motion to dismiss and accompanying brief. However, the previous motion to dismiss was not filed in response to Mr. Harris's Proposed Amended Complaint but rather was filed to dismiss the first amended complaint, which the Court has now stricken from the docket (Dkt. Nos. 2; 17; 23; 31, ¶ 5). The Court will consider, however, whether permitting Mr. Harris to amend would be futile.

#### a. Title VII—Disparate Treatment

To establish a *prima facie* case of discrimination under Title VII, Mr. Harris must show that: (1) he was a member of the protected group; (2) he was qualified to perform the job; (3) he suffered an adverse employment action; and (4) circumstances permit an inference of discrimination. *Lewis v. Heartland Inns of Am., L.L.C.,* 591 F.3d 1033, 1038 (8th Cir. 2010). "The required prima facie showing is a 'flexible evidentiary standard,'" and Mr. Harris can satisfy the fourth part of the *prima facie* case in a variety of ways, such as by showing more favorable treatment of similarly situated employees who are not in the protected class or biased comments by a decisionmaker. *Id.* at 1039–40 (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002)); *see Pye v. Nu Aire, Inc.,* 641 F.3d 1011, 1019 (8th Cir. 2011).

In their response to Mr. Harris's third motion to amend complaint, Defendants claim that Mr. Harris's disparate treatment claim does not adequately allege any facts showing that he was treated differently than similarly situated employees (*Id*., ¶ 6). Mr. Harris asserts in his Proposed Amended Complaint, however, that he had as much or more sales experience, but that he did not receive the same salary or expense reimbursement as four other white salesmen who were hired at the same time that he was hired and were doing the same job (*Id*., ¶ 33). He also claims that he was assigned to cover more territory than other white salesmen hired at the same time that he was hired were required to cover (*Id*., ¶ 35). Taking the allegations in the Proposed Amended Complaint as true, which the Court is required to do at this stage of the litigation, the Court determines that it would not be futile to permit Mr. Harris to amend his complaint to raise his claims of race discrimination under Title VII at this stage.

b. **Title VII—Retaliation**

"Title VII forbids an employer from 'discriminat[ing] against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].'" *Liles v. C.S. McCrossan, Inc.*, 851 F.3d 810, 818 (8th Cir. 2017) (quoting 42 U.S.C.§ 2000e-3(a)). To establish a retaliation claim under Title VII, "a plaintiff must first establish a prima facie case by showing that he or she: '(1) engaged in statutorily protected activity; (2) he [or she] suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and the protected activity.'" *Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 880 (8th Cir. 2005) (quoting *E.E.O.C. v. Kohler Co.*, 335 F.3d 766, 772 (8th Cir. 2003)). "[T]he threshold of proof necessary to establish a *prima facie* case is minimal." *Young v. Warner-Jenkinson Co.*, 152 F.3d 1018, 1022 (8th Cir. 1998).

Defendants assert that with respect to his retaliation claims Mr. Harris does not adequately allege an adverse employment action.  Mr. Harris asserts, however, that Defendants' retaliation prevented him from earning as much income as white salespeople.  He also asserts that delays in processing his sales orders prevented him from making his sales quota and interfered with his relationships with his customers in order to persuade customers to support the company's assertion that Mr. Harris had violated a company rule (*Id*., ¶ 54).  Mr. Harris asserts that retaliation from Mr. Deem and Ms. Haight caused him to miss his sales quota, so that he could be denied additional pay, and, in turn, could be subject to termination in retaliation for his complaints of discrimination (*Id*., ¶ 55).  Taking the allegations in the Proposed Amended Complaint as true, the Court determines that it would not be futile to permit Mr. Harris to amend his complaint to raise his retaliation claims at this stage.

###     c.     ADA

To establish a *prima facie* case of discrimination based on disability under the ADA, Mr. Harris must show that he: "(1) is disabled within the meaning of the ADA; (2) is a qualified individual under the ADA; and (3) has suffered an adverse employment decision because of the disability." *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 905 (8th Cir. 2015) (quoting *Kallail v. Alliant Energy Corp. Servs., Inc.,* 691 F.3d 925, 930 (8th Cir. 2012)).

Defendants maintain that Mr. Harris does not plead adequately a disability, that he suffered an adverse employment action, or that he exhausted his administrative remedies with respect to his ADA claim.  At this stage, however, the Court cannot conclude based on the record before it that permitting Mr. Harris to amend his complaint to allege an ADA claim would be futile given that Mr. Harris asserts that he provide his supervisor notification of a disability; that he advised his new supervisor of the need for an accommodation of that disability when he transitioned to a new, full-time position; and that he suffered an adverse employment action of being unable to meet assigned sales quotas, unpaid salary, and lost sales

income.  Taking the allegations in the Proposed Amended Complaint as true, the Court determines that it would not be futile to permit Mr. Harris to amend his complaint to raise his ADA claims at this stage.

### d. ACRA

The ACRA prohibits discrimination by employers on the basis of "race, religion, national origin, gender, or the presence of any sensory, mental, or physical disability."  Ark. Code Ann. § 16-123-107(a)(1).  Violations of the ACRA are evaluated under the Title VII discrimination framework and relevant federal case law prohibiting disparate treatment.  *See Rinchuso v. Brookshire Grocery Co.*, 944 F.3d 725, 729 (8th Cir. 2019) (citing *Greenlee v. J.B. Hunt Transp. Servs.*, 342 S.W.3d 274, 277-79 (Ark. 2009)).  Taking the allegations in the Proposed Amended Complaint as true, the Court determines that it would not be futile to permit Mr. Harris to amend his complaint to raise his ACRA claims for the same reasons that it determines that it would not be futile to permit Mr. Harris to raise his Title VII and ADA claims at this stage.

### e. Claims Against Individual Defendants

Defendants assert that claims against the individual defendants that Mr. Harris names are barred as a matter of law to the extent brought under Title VII, the ADA, or ACRA (Dkt. No. 31, ¶ 10).  Assuming without deciding that Defendants are correct that Mr. Harris cannot bring claims against the individual defendants under Title VII, the ADA, or ACRA, Mr. Harris has also asserted claims under 42 U.S.C. § 1981 and a state-law tort claim for intentional infliction of emotional distress, which he is not barred from asserting against individual defendants.  *See Mutua v. Texas Roadhouse Mgmt. Corp.*, 753 F. Supp. 2d 954, 966–67 (D.S.D. 2010) ("[t]he lack of individual liability for discrimination under Title VII does not necessarily dispose of the issue of individual liability for discrimination claims under 42 U.S.C. § 1981.") (quoting *Habben v. City of Fort Dodge*, 472 F.Supp.2d 1142, 1155 (N.D. Iowa 2007)); *Jones v. Forrest City Grocery Inc.*, Case No. 4:06CV00944 BSM, 2008 WL 2717738, at *5 (E.D. Ark. June 26, 2008) ("An individual may

be held liable under section 1981, regardless of whether that individual's employer is subject to liability") (citing *Brooks v. Linn Mar Cmty. Sch. Dist.*, Case No. C95-0395 (N.D. Iowa July 1, 1997).

Taking the allegations in the Proposed Amended Complaint as true, the Court determines that it would not be futile to permit Mr. Harris to amend his complaint to raise his claims against individual defendants at this stage.

### f. Exclusive Remedy

Defendants asserts that Mr. Harris's claims under 42 U.S.C. § 1981 are barred under the exclusive remedy doctrine and for failure to state a claim. At this stage of the litigation, the Court observes that the Federal Rules of Civil Procedure explicitly allow parties to include in their pleadings demands for alternative relief, and to "set out 2 or more statements of a claim or defense alternatively or hypothetically," and to "state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(a)(3); 8(d)(2), (3).

Taking the allegations in the Proposed Amended Complaint as true, the Court determines that it would not be futile to permit Mr. Harris to amend his complaint to raise claims under 42 U.S.C. § 1981 at this stage. *See Robinson v. American Red Cross*, 753 F.3d 749, 754 (8th Cir. 2014) (noting discrimination claims brought under both Title VII and § 1981 are analyzed under the *McDonnell Douglas* burden–shifting framework).

### g. Intentional Infliction Of Emotional Distress

"To establish a claim of intentional infliction of emotional distress, known in Arkansas as the tort of outrage, the plaintiff must prove that: (1) the defendant intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct; (2) the conduct was extreme and outrageous and utterly intolerable in a civilized community; (3)

the defendant's conduct was the cause of the plaintiff's distress; and (4) the plaintiff's emotional distress was so severe that no reasonable person could be expected to endure it." *Seals v. Corr. Med. Servs., Inc.*, 473 F. Supp. 2d 912, 924–25 (E.D. Ark. 2007) (citing *Fuqua v. Flowers,* 20 S.W.3d 388, 391–92 (2000)).

Mr. Harris contends that Defendants knew that he suffered from depression and anxiety and that Defendants acted in such a way to make his work conditions intolerable (Dkt. No. 30-1, ¶¶ 25, 26, 38). Mr. Harris asserts that the actions of his supervisors caused him to fear that they would contrive reasons to fire him or make up plots to get him fired (*Id*., ¶ 42). Mr. Harris states that his personal life "was consumed daily with anxiety about work and it manifested itself in being only able to sleep two to three hours a night, frequent nightmares, tension headaches, detachment from personal relationships with friends and family and other interpersonal contacts, stomach problems, panic attacks and neck and upper back pain from stress and anxiety." (*Id*., ¶ 43). Mr. Harris contends the stress was so intense that he "had a nervous breakdown that he suffered due to the actions of the Defendants" (*Id*., ¶ 45). Mr. Harris asserts he "suffered extreme mental and emotional anguish from the actions against him by the Defendants and, because of the knowledge of the medical conditions that the Plaintiff had divulged to the Defendants, the Defendant's acted recklessly and with extreme indifference to the foreseeable effects of their harassment (*Id*., ¶ 58). Taking the allegations in the Proposed Amended Complaint as true, the Court determines that it would not be futile to permit Mr. Harris to amend his complaint to raise this claim at this stage.

### D. Conclusion

The Court grants Mr. Harris's third motion to amend complaint (Dkt. No. 30). Mr. Harris may file his Proposed Amended Complaint within 21 days of the filing of this Order (Dkt. No. 30-1).

### III.  Motions To Dismiss

On May 24, 2021, and December 8, 2021, Defendants filed motions to dismiss asserting that Mr. Harris fails to state a claim on which relief can be granted as to any of his asserted causes of action in both his complaint and his first amended complaint (Dkt. Nos. 2, 23).  "[A]s a general proposition, if a defendant files a Motion to Dismiss, and the plaintiff later files an Amended Complaint, the amended pleading renders the defendant's motion to dismiss moot." *Oniyah v. St. Cloud State Univ.*, 655 F. Supp. 2d 948, 958 (D. Minn. 2009) (citing *Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002) ("If anything, [plaintiff's] motion to amend the complaint rendered moot [defendant's] motion to dismiss the original complaint."); *Standard Chlorine of Del., Inc. v. Sinibaldi*, 821 F. Supp. 232, 239-40 (D. Del. 1992) (finding that plaintiff's filing of an amended complaint rendered defendant's motion to dismiss moot)).  Thus, under Eighth Circuit precedent, the Court's granting of Mr. Harris's third motion to amend renders moot Defendants' previously filed motions to dismiss (Dkt. Nos. 2; 23).  Accordingly, the Court denies as moot Defendants' pending motions to dismiss (Dkt. Nos. 2; 23).

The Court recognizes that Defendants' arguments for dismissing Mr. Harris's claims might remain the same in response to Mr. Harris's Proposed Amended Complaint as they were in response to Mr. Harris's complaint.  Should Defendants seek to dismiss Mr. Harris's Proposed Amended Complaint, Defendants must file a separate motion directed to Mr. Harris's operative amended complaint once filed.

### IV.  Other Pending Motions

#### A.  Motion To Stay Discovery

Before the Court is Defendants' motion to stay discovery (Dkt. No. 11).  Because the Court has denied Defendants' motions to dismiss, the Court denies Defendants' motion to stay discovery (*Id*.).  The Court will by separate order enter a final scheduling Order that will set pretrial deadlines.

### B.   Motion To Request Suspension Of Proceeding

Also before the Court is Mr. Harris's motion to suspend proceedings filed on September 22, 2021 (Dkt. No. 14).  Mr. Harris moved for the Court to suspend proceedings in the matter until November 19, 2021 (*Id*).  Because the time that Mr. Harris requested that the Court suspend the proceedings in this matter has already expired, the Court denies as moot Mr. Harris's motion to suspend proceedings (*Id*.).

### C.   Motion For Appointment Of Counsel

Before the Court is Mr. Harris's motion for appointment of counsel (Dkt. No. 19).  The factors to consider in deciding whether to appoint counsel in a civil case are whether:  (1) the plaintiff can afford to retain an attorney; (2) the plaintiff has made a good-faith effort to retain an attorney but has been unable to do so; (3) there is some factual basis for the plaintiff's lawsuit; and (4) the nature of the litigation is such that the plaintiff and the court would benefit from the assistance of counsel.  *Slaughter v. Maplewood,* 731 F.2d 587, 590 (8th Cir. 1984).  Moreover, courts evaluate factors such as "the complexity of the case, the ability of the indigent litigant to investigate facts, the existence of conflicting testimony, and the ability of the indigent to present his claim."  *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998).  "Indigent civil litigants do not have a constitutional or statutory right to appointed counsel. . . .  The trial court has broad discretion to decide whether both the plaintiff and the court will benefit from the appointment of counsel."  *Davis v. Scott*, 94 F.3d 444, 447 (8th Cir. 1996).

Mr. Harris's motion to appoint counsel lists three lawyers who he contacted to no avail regarding his case. Mr. Harris's complaint and Proposed Amended Complaint contain detailed factual allegations and involve complex issues of law (Dkt. Nos. 1; 30-1). The Court concludes that Mr. Harris would benefit from the assistance of counsel in raising these claims. Accordingly, the Court grants Mr. Harris's motion for appointment of counsel (Dkt. No. 19). The Court will make an appointment of counsel by separate Order.

### D.    Motion To Proceed *In Forma Pauperis*

Before the Court is Mr. Harris's application to proceed *in forma pauperis* (Dkt. No. 20). Before Mr. Harris filed his application to proceed *in forma pauperis*, Mr. Harris paid the filing fee (Dkt. No. 1). The Court finds, based on the information contained in Mr. Harris's application, that Mr. Harris does not have the ability to move forward with the costs of litigation without suffering an undue financial hardship, and the Court grants Mr. Harris's application to proceed *in forma pauperis* (Dkt. No. 20).

### V.    Conclusion

The Court denies as moot Mr. Harris's motion to replace or substitute original proposed first amended complaint with corrections and Mr. Harris's motion to strike the previous proposed amended complaints and to substitute and replace with first amended complaint (Dkt. Nos. 12; 18). For reasons explained in this Order, the Court directs the Clerk of the Court to strike from the record the first amended complaint that Mr. Harris filed on November 24, 2021, and to remove WEHCO Media Inc., Perry Whitmore, and Elaine Burson, who were named by Mr. Harris in the first amended complaint, as defendants (Dkt. No. 17).

The Court grants Mr. Harris's third motion to amend complaint (Dkt. No. 30). Mr. Harris may file his Proposed Amended Complaint within 21 days of the filing of this Order (Dkt. No. 30-1). The Court denies as moot Defendants' pending motions to dismiss (Dkt. Nos. 2; 23).

The Court denies Defendants' motion to stay discovery (Dkt. No. 11). The Court denies Mr. Harris's motion to suspend proceedings (Dkt. No. 14). The Court grants Mr. Harris's motion for appointment of counsel and will make an appointment of counsel by separate Order (Dkt. No. 19). The Court grants Mr. Harris's motion to proceed *in forma pauperis* (Dkt. No. 20).

It is so ordered this 22nd day of February, 2022.

_____
Kristine G. Baker
United States District Judge